IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT LIPINSKI,

   Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC., et al.,

   Defendants.

Civil Action No.: SAG-20-411

**MEMORANDUM OPINION**

In this civil rights action, Plaintiff Robert Lipinski alleges that Defendants Wexford Health Sources, Inc., Corizon Health Inc., Jason Clem, M.D., Paul Goodman, M.D., Amy Green-Simms, M.D., and Alesha Spellman-Smith, O.D.[1] failed to provide adequate medical care. Defendants Amy Green-Simms, M.D. and Paul Goodman, M.D., have each moved to dismiss the action or, alternatively, for summary judgment in their favor. ECF Nos. 7 and 19. Wexford Health Sources Inc., and Jason Clem, M.D. (the "Wexford Defendants") along with Corizon Health, Inc., and Jason Clem, M.D. (the "Corizon Defendants") have each also moved to dismiss the action or, alternatively, for summary judgment to be granted in their favor. ECF Nos. 25 and 29. Lipinski opposes the motions, contending among other things, that it is premature to rule on the dispositive motions without his having had the opportunity to conduct discovery. ECF Nos. 32, 33, 34 and 38. He also seeks the appointment of counsel. ECF No. 39. Goodman, Green-Simms, Wexford Defendants, and Corizon Defendants have replied. ECF Nos. 35, 36, and 40. Additionally, Wexford Defendants' move to supplement their dispositive motion by adding additional medical records (ECF No. 37), which is granted. For the reasons that follow Lipinski's Motion to Appoint Counsel is granted, and the pending dispositive motions denied without prejudice.

---

[1] Spellman-Smith has not been served with the Complaint.

## I. Background

In his Complaint Lipinski states that he was diagnosed with a cataract in his right eye on December 16, 2016. ECF No. 1, p. 8; ECF No. 1-1, p. 1. On February 15, 2017, the cataract was described as "mature." ECF No. 1, p. 8; ECF No. 1-1, p. 1. After examination on May 4, 2017, a dense white nuclear sclerotic cataract was identified and cataract surgery was recommended. ECF No. 1, p. 8; ECF No. 1-1, p. 3. However, on November 16, 2017, collegial review found that Lipinski did not meet the criteria for surgical removal of the cataract and the implantation of a replacement lens. ECF No. 1, p, 8; ECF No. 1-1, p. 4.

In December of 2017 and January 2018, Lipinski submitted sick call slips regarding the scheduling of cataract surgery. ECF No. 1, pp. 8-9; ECF No. 1-1, pp. 6-7. He did not, however, have another eye examination until March 2, 2018. ECF No. 1, p. 9; ECF No. 1-1, p. 8. Three days later a retinal photo showed a mature cataract blocking the vision in Lipinski's right eye. ECF No. 1, p. 9; ECF No. 1-1, p. 9. Lipinski resorted to wearing eye glasses due to the impairment of his vision in his left eye and total blindness caused by the cataract in the right eye. ECF No. 1, p. 9; ECF No. 1-1, p. 10.

On July 13, 2018, during an ophthalmology visit, the mature white nuclear sclerotic cataract was again identified in Lipinski's right eye and it was documented that he had no vision in that eye. ECF No. 1, p. 9; ECF No. 1-1, p. 11. It was also noted that Lipinski did not meet the criteria for approval of the removal of the cataract and implantation of a lens, and he should return for follow up in six months. *Id.*; *see also* ECF No. 1-1, p. 4. The administrative note from the visit indicates that "according to current criteria, if bilateral acuity is 20/50, pt is not indicated for cataract surgery." ECF No. 1-1, p. 4. The note further indicated that Lipinski stated that he had safety concerns due to the lack of vision in his eye and that the provider would follow up with the medical director regarding considerations for treatment. *Id.*

On August 24, 2018, during a provider chronic care clinic, Lipinski told Nurse Practitioner Stephanie Cyran that he did not have any vision in his right eye and he was afraid for his safety. Cyran advised that she would follow up with Dr. Clem, Medical Director, about the availability of any medically indicated treatment. ECF No. 1, p. 9, ECF No. 1-1, p. 4. Cyran followed up with Clem who advised that "[a]t this time, according to current criteria, if bilateral acuity is 20/50 [patient] is not indicated for cataract surgery." ECF No. 1, p. 10; ECF No. 1-1, p. 4. Lipinski was told his follow up appointments with ophthalmology would continue every three months. *Id*. Lipinski states that he learned from Cyran that he did not meet the criteria for surgery for his right eye because he had vision in his left eye. ECF No. 1, p. 10. Lipinski claims that cataract surgeries are ordinarily recommended to be scheduled prior to serious visual effects. *Id*.

Lipinski had a follow up ophthalmology appointment on October 4, 2018. ECF No. 1, p. 10; ECF No. 1-1, p. 12. At that time his diagnosis was identified as a mature brunescent nuclear sclerotic cataract in the right eye. ECF No. 1-1, p. 12. Lipinski explains that brunescent cataracts are brown and opaque and have an increase in surgical complications. ECF No. 1, p. 10. Lipinski asked that his case be submitted to collegial again. *Id*. The medical provider explained the risks of cataract removal and intraocular lens implantation. ECF No. 1, p. 10; ECF No. 1-1, p. 12. Lipinski states that the provider also noted an increased risk of posterior capsular tear. *Id*.

Lipinski was again evaluated by NP Cyran on November 20, 2018. ECF No. 1, p. 10; ECF No. 1-1, p. 13. Lipinski again advised Cyran that he had no vision in his right eye and was concerned for his safety in the institution. *Id*. Cyran advised that Dr. Clem would be contacted regarding Lipinski's treatment. *Id*.

Lipinski was again seen by ophthalmology on April 4, 2019. ECF No. 1, p. 11, ECF No. 1-1, p. 17. The cataract was again described as a mature nuclear sclerotic cataract. *Id*. At this

3

appointment, the unidentified ophthalmologist wrote "no surgery yet" and referred to the October 2018 collegial review of Lipinski's care. *Id.*

During a chronic care visit on July 24, 2019, Lipinski stated that the vision in his left eye had changed, he had no peripheral vision in the right eye, and he was concerned about his vision. ECF No. 1, p. 11; ECF No. 1-1, p. 18. Cyran advised Lipinski that she reviewed his medical issues with Dr. Clem, and the plan was for an ophthalmology assessment, recommendation, and consultation. *Id.*

Lipinski was seen by an optometrist on August 17, 2019. ECF No. 1, p. 11; ECF No. 1-1, p., 22. Lipinski's right eye was unrefractable, and a mature cataract was noted. *Id.* Lipinski states that at this time, his cataract was diagnosed as inoperable. Without medical intervention, he was left permanently blind in the right eye. ECF No. 1, p. 11. Lipinski filed this civil rights complaint on February 14, 2020. ECF No. 1. The cataract was successfully removed on September 3, 2020, over three years after the surgery was first recommended, and the vision in Lipinski's right eye was restored to 20/100 as a result of the surgery. ECF No. 37-2.

Lipinski alleges that throughout the relevant time period, he was seen by Defendants Goodman, Green-Simms, and Spellman-Smith. ECF No. 1, p. 11. At various times Defendants Goodman, Green-Simms, and Spellman-Smith were aware of Lipinski's need for medical attention but failed to provide it or ensure the needed care was available. *Id.*, p. 12. Lipinski states that the lack of vision in his right eye posed a significant risk to his safety and mobility in prison. *Id.* Lipinski alleges that the foregoing conduct violated his rights under the Eighth Amendment and constituted medical negligence. ECF No. 1, pp. 14-15. He seeks "[i]njunctive relief in the form of proper treatment of his serious medical condition" and monetary damages. *Id.*, p. 15.

In support of their dispositive motions, Defendants have provided the affidavits of Jason Clem, M.D. (ECF Nos. 25-5 and 29-3), along with Lipinski's relevant medical records (ECF Nos.

7-3; 19-3; 25-4; 29-4; 37-2; ) and the policies and procedures of Wexford (ECF No. 25-6). Essentially, Defendants contend that they had no direct involvement in decisions regarding the scheduling of surgery or that Wexford's policy regarding approval of cataract surgery was an appropriate one.

## II. Standard of Review

Defendants' motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc.*, 788 F. Supp. 2d at 436-37.

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger,* 510 F.3d at 450. However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth*., 149 F.3d 253, 261 (4th Cir. 1998).

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co*, 637 F.3d at 448-49; *see*

5

*Putney v. Likin*, 656 F. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports,* 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.,* 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham,* 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd,* 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure

6

to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

In each of his opposition responses, Lipinski argues that it is premature to resolve Defendants' dispositive motions as he has not had the opportunity to engage in discovery, and he has provided the requisite affidavits in support of his argument. The Wexford Defendants erroneously contend that Lipinski offers no specific argument in favor of his motion. ECF No. 36, p. 2, ¶ 6. To the contrary, Lipinski seeks the opportunity to consult with medical experts and specialized counsel to assess the actions and inactions of medical providers. He avers that he has not had the opportunity to evaluate the credibility or completeness of Defendants' statement of

7

facts, nor does he have the ability to obtain a medical expert. He explains that without an expert witness, he cannot prove Defendants were aware of or recklessly disregarded a serious risk to his health in light of his extensive medical history and his deteriorating and eventual loss of eyesight. He also seeks to explore the mindset of Defendants by taking their depositions. Further, he requests to depose other witnesses, including prison staff, fellow inmates, and non-Defendant medical providers, regarding the impact of his deteriorating vision on his daily life, and the management of his cataract and deteriorating vision. ECF No. 32-2, pp. 2-5; ECF No. 33-2, pp. 2-5; ECF No. 34-2, pp. 2-5; ECF No. 38-1, pp. 2-5. Lipinski avers that he believes discovery will allow him to present evidence to create a genuine issue of material fact. *Id.* The court agrees. Lipinski has articulated both the basis for his need for discovery and how the requested discovery will assist him in creating genuine issues of material fact. In light of the foregoing, his request for appointment of counsel will be granted.

## IV. Conclusion

For the foregoing reasons, the dispositive motions are denied without prejudice. Lipinski's motion to appoint counsel is granted. An Order follows.

DATED: December 22, 2020                     _____/s/_____
                                             Stephanie A. Gallagher
                                             United States District Judge